# EXHIBIT 1

Case 9:21-cv-01597   Document 1-1   Filed 03/25/21   Page 2 of 54 PageID #: 8

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

-----------------------------------------------------------------X

|  |  |
|---|---|
| LONG ISLAND UNIVERSITY | Index No.: |
| Plaintiff, | **SUMMONS WITH NOTICE** |
| -against- | |
| | The basis of venue: |
| | Plaintiff's Residence in Nassau County |
| MARKEL INSURANCE COMPANY | |
| Defendants. | The defendant resides at: |
| | 4600 Cox Road |
| | Glen Allen, Virginia 23060-9817 |

-----------------------------------------------------------------X

***To the above-named Defendants:***

     **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's attorneys within 20 days after the service of this summons, exclusive of the date of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief as demanded herein below.

Dated: December 31, 2020
     East Norwich, New York 11732

                          LAW OFFICE OF VINCENT D. McNAMARA
                              */s/ Helen M. Benzie*

                By:_____
                     Helen M. Benzie

Defendants' address:         Attorneys for Plaintiff
4600 Cox Road              **LONG ISLAND UNIVERSITY**
Glen Allen, Virginia 23060-9817    LAW OFFICE OF VINCENT D. McNAMARA
                      1045 Oyster Bay Road-Suite 1
                      East Norwich, New York 11732
                      516-922-9100

11-20-20

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------X

LONG ISLAND UNIVERSITY,                          Index No.

                     Plaintiffs,                    **DECLARATORY
                                                 JUDGMENT
                                                 COMPLAINT**

      -against-

MARKEL INSURANCE COMPANY,

                     Defendants.
-------------------------------------------------------------X

      Plaintiff, LONG ISLAND UNIVERSITY ("LIU"), by its attorneys, the LAW

OFFICE OF VINCENT D. McNAMARA, 1045 Oyster Bay Road, Suite 1, East

Norwich, New York 11732, hereby alleges upon information and belief as follows:

<u>INTRODUCTION</u>

      1.    This is an action for a Declaratory Judgment by the plaintiff LIU pursuant

to CPLR §3001, declaring that: (a) Markel Insurance Company ("Markel"), is obliged to

defend and indemnify LIU in two underlying actions in the Supreme Court of the State of

New York, County of Nassau entitled: *Kourtney Tankleff v. Long Island University and*

*North Shore Equestrian Center, Inc.,* in the Supreme Court of the State of New York,

County of Nassau, Index No.604300/2018, ("Tankleff Action") and *Gabriella F. Furman*

*v. North Shore Equestrian Center, Inc. and Long Island University,* in the Supreme Court

of the State of New York, County of Nassau, Index No. 613278/2019, ("Furman

Case 9:21-cv-01597   Document 1-1   Filed 03/25/21   Page 4 of 54 PageID #: 10

11-20-20

Action"),(collectively "underlying actions") up to the limit of each Primary Comprehensive General Liability Policy provided by Markel in the sum of $1,000,000.00; (b) Markel is obliged to reimburse LIU for all defense costs and expenses incurred in each of the underlying actions; (c) Markel is obliged to pay for all defense costs and expenses to be incurred in each of the underlying actions and any indemnity which may be incurred; and (d) Markel has breached  the contract of insurance and is required to defend and indemnify LIU in each underlying action.

## VENUE and JURISDICTION

2.      The venue of this action  in New York State Supreme Court, Nassau County is proper pursuant to CPLR §503(c) since LIU maintains its offices and main campus in Nassau County, North Shore Equestrian Center, Inc. ("NSEC") maintains its primary place of business operations in Nassau County and the underlying actions are venued in Nassau County.

3.       This Court has jurisdiction over this claim as this complaint seeks declaratory relief pursuant to CPLR §3001.

## PARTIES

4.      Long Island University is an institution of higher education organized and authorized under the Education Law of the State of New York with its principal office and main campus located in the County of Nassau, 700-720 Northern Blvd., Greenvale, New York 11568.

2

Case 9:21-cv-01597 Document 1-1 Filed 03/25/21 Page 5 of 54 PageID #: 11

11-20-20

5.      Markel Insurance Company is an insurance company organized under the laws of the State of Illinois with its primary place of business at 4600 Cox Road, Glen Allen, Virginia 23060-9817 and is authorized to conduct an insurance business in the State of New York.

## BACKGROUND

6.      Long Island University and North Shore Equestrian Center Inc. entered into a Lease Agreement Amended September 23, 1999 ("Lease Agreement") for the premises occupied by North Shore Equestrian Center at the LIU Post Campus.

7.      The Lease Agreement allocated the risks of loss between the parties.

8.      The Lease Agreement required NSEC to indemnify, hold harmless, and defend LIU.

9.      Under the Lease Agreement, NSEC agreed to provide liability insurance to LIU among other things.

10.      Markel issued policy number 9502AG03156-21 to North Shore Equestrian Center Inc. for the period June 5, 2016 to June 5, 2017.

11.      Markel policy number 9502AG03156-21 was written on an occurrence basis.

12.      LIU is designated as an additional insured under  Markel policy number 9502AG03156-21 for the period   June 5, 2016 to June 5, 2017.

13.      Markel issued policy number 9502AG03156-22 to North Shore Equestrian

3

Case 9:21-cv-01597   Document 1-1   Filed 03/25/21   Page 6 of 54 PageID #: 12

11-20-20

Center Inc. for the period   June 5, 2017 to June 5, 2018.

14.    Markel policy number 9502AG03156-22 was written on an occurrence basis.

15.    LIU is designated as an additional insured under   Markel policy number 9502AG03156-22 for the period   June 5, 2017 to June 5, 2018.

16.    The Tankleff action was commenced by the filing of a summons and complaint on April 2, 2018 by Kourtney Tankleff against Long Island University and North Shore Equestrian Center Inc. for a claim occurring on November 22, 2016. ( Exhibit A, Tankleff Summons and Complaint).

17.     LIU tendered the defense in the Tankleff action to Markel on May 14, 2018.

18.    LIU appointed counsel, appeared and has been defending the underlying Tankleff action.

19.    Markel declined coverage, defense and indemnification for the Tankleff action on December 13, 2018.

20.    The Furman action was commenced on September 25, 2019 by Gabriella F. Furman  against North Shore Equestrian Center and Long Island University for a claim occurring on November 28, 2017. (Exhibit B, Furman Summons and Complaint).

21.    Notice of the Furman claim was given to Markel on May 1, 2019.

22.    Markel denied the claim on May 8, 2019.

4

Case 9:21-cv-01597  Document 1-1  Filed 03/25/21  Page 7 of 54 PageID #: 13

11-20-20

23.    LIU appointed counsel, appeared and has been defending the underlying Furman action.

24.    As an additional insured under the Markel 2017 Insurance Policy, LIU tendered the defense in the Furman action to Markel, by a letter dated on March 4, 2020, pursuant to the terms of the Lease Agreement between Long Island University and North Shore Equestrian Center for the premises occupied by North Shore Equestrian Center.

25.    On May 29, 2020 Markel refused to accept the tender of the defense and indemnification under the insurance policy.

## POLICIES

26.    LIU has a self-insured retention of the first $150,000 in defense and indemnification expenses under United Educators Primary General Liability policy number CGL201600009400 ("United Educators 2016 policy") to Long Island University on an occurrence basis for the period October 1, 2016 to October 1, 2017.

27.    Markel issued  General Liability Farm Package Non-Texas policy number 9502AG03156-21 on an occurrence basis for the period June 5, 2016 to June 25, 2017 to NSEC ("Markel 2016 Policy") which provides Commercial General Liability and Farm coverages for leased premises located at Long Island University-C.W. Post Campus, Nassau Co., Greenvale, New York 11548.

28.    NSEC is the Primary Named Insured in the Markel 2016 Policy for farming operations which are described as "boarding/riding academy".

5

Case 9:21-cv-01597   Document 1-1   Filed 03/25/21   Page 8 of 54 PageID #: 14

11-20-20

29.    LIU is an additional insured under a separate endorsement to the Markel 2016 Policy. (Exhibit C -Additional Insured Endorsement Markel 2016 Policy).

30.    Under its Commercial General Liability terms, the Markel 2016  Policy provides coverage for contracts under which NSEC is required to provide defense and indemnity including legal fees.

31.    Among the contracts for which indemnity coverage exists under the Markel 2016 Policy is the subject Lease Agreement between LIU and NSEC.

32.    The Markel 2016 Policy also contains a Limited Professional Liability Horse Trainers and Riding Instructors Endorsement providing coverage for services of any horse trainer and/or riding instructor on the premises. (Exhibit D- Limited Professional Liability- Horse Trainers and Riding Instructors Endorsement Markel 2016).

33.    Under the United Educators Primary Comprehensive General Liability Policy No. B48-98T ("United Educators 2017 Policy")issued on an occurrence basis  to Long Island University for the period  October 1, 2017 to October 1, 2018, LIU has a self-insured retention of the first $150,000 in defense and indemnification expenses.

34.    Markel issued a General Liability Farm Package Non-Texas policy 9502AG03156-22 on an occurrence basis for the period June 5, 2017 to June 25, 2018 to NSEC (Markel 2017 Policy) to NSEC which provides Commercial General Liability and Farm coverages for leased premises located at Long Island University-C.W. Post Campus, Nassau Co., Greenvale, New York 11548.

6

11-20-20

35.     Under the Markel 2017 Policy, NSEC is the Primary Named Insured for farming operations which are described as "boarding/riding academy".

36.     LIU is an additional insured under a separate endorsement to the Markel 2017 Policy. ( Exhibit E Policy Additional Insured Endorsement Markel 2017 Policy).

37.     Under its Commercial General Liability terms, the Markel 2017  Policy provides coverage for contracts under which NSEC is required to provide indemnity.

38.     Among the contracts for which indemnity coverage under the Markel 2017 Policy exists is the subject Lease Agreement between LIU and NSEC.

39.     The Markel 2017 Policy also contains a Limited Professional Liability-Horse Trainers and Riding Instructors Endorsement providing coverage for  services of any horse trainer and/or riding instructor on the premises. (Exhibit F, Limited Professional Liability- Horse Trainers and Riding Instructors Endorsement Markle 2017 Policy).

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR A DECLARATORY JUDGMENT

40.     Plaintiffs repeat, reiterate and reallege each and every allegation of the Complaint designated Paragraph 1 through 37, as if more fully set forth at length herein.

41.     Markel has failed to provide a defense to LIU for the claims alleged in the underlying actions.

42.     Markel has not responded timely to the requests of LIU to assume the defense of Long Island University under the subject Markel 2016 and 2017 Insurance

7

Case 9:21-cv-01597 Document 1-1 Filed 03/25/21 Page 10 of 54 PageID #: 16

11-20-20

Policies in the underlying actions.

43.    LIU seeks a determination of its rights with regard to the Markel 2016 Policy, including a Declaratory Judgment that Markel is required to defend LIU in the Tankleff action.

44.    LIU seeks a determination of its rights with regard to the Markel 2017 Policy, including a Declaratory Judgment that Markel is required to defend LIU in the Furman action.

45.    LIU has no adequate remedy at law.

AS AND FOR A SECOND CAUSE OF ACTION
FOR A DECLARATORY JUDGMENT

46.    LIU repeats, reiterates and realleges each and every allegation of the Complaint designated Paragraphs 1 through 43, as if more fully set forth at length herein.

47.    As a result of Markel's failure to acknowledge its obligation as the primary policy to defend LIU, LIU has been required to bear 100% of the defense costs of LIU in the underlying Tankleff and Furman actions.

48.    Markel as the liability insurer, should bear 100% of the total defense costs of LIU in each of the underlying actions because LIU has sought coverage under the Markel Policy.

49.    Markel, not LIU should bear the total defense cost of LIU in each of the underlying Tankleff and Furman actions.

50.    LIU has no adequate remedy at law.

8

FILED: NASSAU COUNTY CLERK 12/31/2020 12:47 PM
NYSCEF DOC. NO. 1

INDEX NO. 615294/2020

RECEIVED NYSCEF: 12/31/2020

Case 9:21-cv-01597 Document 1-1 Filed 03/25/21 Page 11 of 54 PageID #: 17

11-20-20

### AS AND FOR A THIRD CAUSE OF ACTION
### FOR DECLARATORY JUDGMENT

51.     LIU repeats, reiterates and realleges each and every allegation of the Complaint designated Paragraphs 1 through 48, as if more fully set forth at length herein.

52.     Markel has failed to satisfy its defense obligations to LIU under the Markel Policy and to reimburse LIU for the costs incurred defending itself in each of the underlying actions.

53.     LIU is entitled to a Declaration that Markel, not LIU, is responsible for and must reimburse LIU for the defense costs that LIU has incurred in defending itself in each of the underlying actions.

54.     LIU is entitled to a Declaration that Markel, not LIU, is responsible for and must pay for any future costs LIU will incur in defense of LIU in each of the underlying actions to be determined by the Court.

55.     LIU has no adequate remedy at law.

### AS AND FOR A FOURTH CAUSE OF ACTION
### FOR BREACH OF CONTRACT

56.     LIU repeats, reiterates and realleges each and every allegation of the Complaint designated Paragraphs 1 through 53 as if more fully set forth at length herein.

57.     Markel through its duly authorized agents and employees, made unambiguous written promises in the form of written contracts which established an agreement for comprehensive general liability coverage.

9

Case 9:21-cv-01597 Document 1-1 Filed 03/25/21 Page 12 of 54 PageID #: 18

11-20-20

58.    To date, Markel has breached or will breach its obligations by refusing to honor the terms of its written agreements and by wrongly refusing to defend, reimburse defense costs and expenses, or indemnify LIU in connection with the underlying Tankleff and Furman actions.

59.    As a result, LIU has sustained and will sustain damages.

60.    By reason of Markel breaches and future breaches of the written agreements,  Markel is liable to Iona for damages, including but not limited to compensatory and consequential damages, and attorneys' fees and expenses in amounts as yet to be determined at trial.

<u>DEMAND FOR JURY TRIAL</u>

61.    LIU hereby demands trial by jury of any and all issues so triable.

**WHEREFORE**, LIU respectfully requests entry of a judgment determining the respective rights and obligations of LIU with respect to the obligation of Markel to defend and indemnify Long Island University pursuant to the coverage provided under each Markel Policy, as follows:

(a)    Declaring Markel Insurance Company ("Markel"), is obliged to defend and indemnify LIU in the underlying action in the Supreme Court of the State of New York, County of Nassau entitled: *Kourtney Tankleff v. Long Island University and North Shore Equestrian Center, Inc.,* in the Supreme Court of the State of New York, County of Nassau, Index No.604300/2018, ("Tankleff Action") up to the limit of the Markel 2016 Primary Comprehensive General

10

Case 9:21-cv-01597 Document 1-1 Filed 03/25/21 Page 13 of 54 PageID #: 19

11-20-20

Liability Policy provided by Markel in the sum of $1,000,000.00;

     (b)     Declaring Markel Insurance Company, is obliged to defend and indemnify LIU in the underlying action in the Supreme Court of the State of New York, County of Nassau entitled: *Gabriella F. Furman v. North Shore Equestrian Center, Inc. and Long Island University,* in the Supreme Court of the State of New York, County of Nassau, Index No. 613278/2019, up to the limit of the Markel 2017 Primary Comprehensive General Liability Policy provided by Markel in the sum of $1,000,000.00;

     (c)     Declaring Markel is obliged to reimburse LIU for all defense costs and expenses incurred in each of the underlying actions;

     (d)     Declaring Markel is obliged to pay for all defense costs and expenses to be incurred in each of the underlying actions and any indemnity which may be incurred; and

     (e)     Markel has breached the contract of insurance and is required to defend and indemnify LIU in each of the underlying actions;

     (f)     Awarding LIU against Markel direct and consequential damages including but not limited to compensatory and consequential damages, and attorneys' fees and expenses in amounts as yet to be determined at trial;

     (g)     Together with such other and further relief as the Court may deem just and proper, plus the attorneys' fees, costs and disbursements of the within action.

Dated: East Norwich, New York
     December 31, 2020

LAW OFFICE OF VINCENT D. McNAMARA
By:   */s/ Helen M. Benzie*
          Helen M. Benzie, Esq.
Attorneys for Plaintiff LONG ISLAND UNIVERSITY
Tower Square
1045 Oyster Bay Road, Suite 1
East Norwich, New York 11732

11

11-20-20

(516) 922-9100

## VERIFICATION

STATE OF NEW YORK ⟩
⟩ ss.:
COUNTY OF NASSAU ⟩

CHRISTOPHER FEVOLA, the undersigned, being duly sworn, deposes and says:

1.     I am Vice-President and Chief Financial Officer of LONG ISLAND UNIVERSITY, a domestic corporation and a defendant in the within action.

2.     I have read the foregoing Declaratory Judgment Complaint and know the contents thereof.

3.     That same are true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

4.     This Verification is made by me because the above party is a corporation and I am an Officer thereof.

LONG ISLAND UNIVERSITY

By: _____
CHRISTOPHER FEVOLA
Vice-President & Chief
Financial Officer

Sworn to before me this
16th day of December 2020

_____
Notary Public

JENNIFER MCLAUGHLIN
NOTARY PUBLIC, State of New York
No. 02MC6110089
Qualified in Nassau County
Commission Expires May 24, 20 12
July 11, 2024

11-20-20

Exhibits

Exhibit A     Tankleff Summons and Complaint

Exhibit B     Furman Summons and Complaint

Exhibit C     Additional Insured Endorsement Markel 2016 Policy

Exhibit D     Limited Professional Liability- Horse Trainers and Riding Instructors Endorsement Markel 2016

Exhibit E     Policy Additional Insured Endorsement Markel 2017 Policy

Exhibit F     Limited Professional Liability- Horse Trainers and Riding Instructors Endorsement Marklel 2017 Policy

13

11-20-20

Exhibit A
Tankleff Summons and Complaint

14

Case 9:21-cv-01597 Document 1-1 Filed 03/25/21 Page 17 of 54 PageID #: 23

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

———————————————————————X

KOURTNEY TANKLEFF,

                        Plaintiff,

          -against-

LONG ISLAND UNIVERSITY POST and
NORTH SHORE EQUESTRIAN CENTER INC.,

                      Defendant.

———————————————————————X

Index No.:
Date Filed:

Plaintiff designates Nassau County as the place of trial

The basis of the venue is defendants' principle place of business

SUMMONS

To the above named Defendant

      **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorneys Goldblatt & Associates within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if the summons is not personally delivered to you within the State of New York); and in the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: Mohegan Lake, New York
       April 02, 2018

                                   Goldblatt & Associates, P.C.
                                   Attorneys for Plaintiff
                                   1846 East Main Street (Route 6)
                                   Mohegan Lake, New York 10547
                                   (914) 788-5000

TO:
Long Island University Post
720 Northern Boulevard
Brookville, New York 11548

North Shore Equestrian Center Inc.,
c/o secretary of state

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------X
KOURTNEY TANKLEFF,

                            Plaintiff(s),                                    INDEX No:

                                                                            VERIFIED
                                                                            COMPLAINT
                    -against-

LONG ISLAND UNIVERSITY POST and
NORTH SHORE EQUESTRIAN CENTER INC.,

                            Defendant(s).
-------------------------------------------------------------------X

Plaintiff, by and through her attorneys, Goldblatt & Associates, P.C. complaining of the

defendants, respectfully alleges, upon information and belief:


AS AND FOR A FIRST CAUSE OF ACTION

1.      That at all times hereinafter mentioned. the plaintiff, Kourtney Tankleff, was and

still is a resident of the State of New York, County of Nassau.

2.      That at all times hereinafter mentioned the defendant Long Island University Post

("LIU") was and is a private educational institution organized and existing under and by virtue of

the laws of the State of New York.

3.      That at all times hereinafter mentioned the defendant LIU was and is a private, for

profit, educational institution organized and existing under and by virtue of the laws of the State of

New York.

Case 9:21-cv-01597  Document 1-1  Filed 03/25/21  Page 20 of 54 PageID #: 26

4.      That at all times hereinafter mentioned the defendant LIU operated an educational institution whereby in exchange for monetary remuneration, members of the general public were permitted to participate in university sanctioned classes in furtherance of obtaining an educational degree.

5.      That at all times hereinafter mentioned, defendant, LIU hired employees and/or teachers to administer the university sanctioned classes including a class referred to as PE 116-Beginning Horseback Riding which was offered within the North Shore Indoor Equestrian Center located on the premises of LIU Post.

6.      That at all times hereinafter mentioned, defendant, LIU, its employees, agents and/or teachers were responsible for administrating the course known as PE 116-Beginning Horseback Riding within the North Shore Indoor Equestrian Center located on the premises of LIU Post.

7.      That at all times hereinafter mentioned, defendant, LIU, owned the North Shore Indoor Equestrian Center located upon the premises known as LIU Post.

8.      That at all times hereinafter mentioned, defendant, LIU, owned stables located upon the premises known as LIU Post that housed horses that were used by the students enrolled in the class known as PE 116-Beginning Horseback Riding and that was part the curriculum offered by defendant LIU.

9.      That at all times hereinafter mentioned, defendant, LIU, owned the horses, including horses named Apache and Drake, that were used by the students enrolled in the class known as PE 116-Beginning Horseback Riding and that was part the curriculum offered by defendant LIU.

10.     That at all times hereinafter mentioned the defendant North Shore Equestrian Center Inc. ("North Shore") was and is a domestic business corporation duly organized and existing under and by virtue of the laws of the State of New York and who registered with the New York State

Department of State having Nassau County as a principal place of doing business.

11.     That at all times hereinafter mentioned the defendant North Shore owned the indoor Equestrian Center located upon the premises known as LIU Post.

12.     That at all times hereinafter mentioned, defendant, North Shore owned stables located upon the premises known as LIU Post that housed horses that were used by the students enrolled in the class known as PE 116-Beginning Horseback Riding and that was part the curriculum offered by defendant LIU. .

13.     That at all times hereinafter mentioned, defendant, North Shore, owned the horses, including horses named Apache and Drake, that were used by the students enrolled in the class known as PE 116-Beginning Horseback Riding and that was part the curriculum offered by defendant LIU.

14.     That at all times hereinafter mentioned, defendant, North Shore, entered into a written contract whereby in exchange for monetary remuneration, defendant North Shore would provide defendant with horses, including horses named Apache and Drake, to be used by the students enrolled in the class known as PE 116-Beginning Horseback Riding and that was part the curriculum offered by defendant LIU.

15.     That at all times hereinafter mentioned, defendant, North Shore, entered into a written contract whereby in exchange for monetary remuneration, defendant North Shore would provide instructors who were responsible for administrating the course known as PE 116-Beginning Horseback Riding offered by defendant LIU within the North Shore Indoor Equestrian Center located upon the grounds of LIU Post.

16.     That at all times hereinafter mentioned, defendant, North Shore, its employees and agents were responsible for the safety of the students who used the horses while participating within

the class known as PE 116-Beginning Horseback Riding offered by defendant LIU within the North Shore Indoor Equestrian Center located upon the grounds of LIU Post.

17.     That at all times hereinafter mentioned, defendant, North Shore, its employees and agents were responsible for preparing the horses that were to be used by students while participating within the class known as PE 116-Beginning Horseback Riding offered by defendant LIU within the North Shore Indoor Equestrian Center located upon the grounds of LIU Post.

18.     That at all times hereinafter mentioned, defendant, North Shore, its employees and agents were responsible for providing equipment that was safe to be used for its intended purpose while being used by students while participating within the class known as PE 116-Beginning Horseback Riding offered by defendant LIU within the North Shore Indoor Equestrian Center located upon the grounds of LIU Post.

19.     That at all times hereinafter mentioned, defendant, LIU, its employees and agents were responsible for the safety of the students who used the horses while participating within the class known as PE 116-Beginning Horseback Riding offered by defendant LIU within the North Shore Indoor Equestrian Center located upon the grounds of LIU Post.

20.     That at all times hereinafter mentioned, defendant, LIU, its employees and agents were responsible for preparing the horses that were to be used by students while participating within the class known as PE 116-Beginning Horseback Riding offered by defendant LIU within the North Shore Indoor Equestrian Center located upon the grounds of LIU Post.

21.     That at all times hereinafter mentioned, defendant, LIU, its employees and agents were responsible for providing a horse that was safe for plaintiff to use while plaintiff was participating within the class known as PE 116-Beginning Horseback Riding offered by defendant LIU within the North Shore Indoor Equestrian Center located upon the grounds of LIU Post.

22.     That on November 22, 2016, plaintiff, Kourtney Tankleff, after paying monetary remuneration to defendant LIU, was lawfully enrolled within the class known as PE 116-Beginning Horseback Riding offered by defendant LIU within the North Shore Indoor Equestrian Center located upon the grounds of LIU Post.

23.     That on November 22, 2016, after paying monetary remuneration to defendant LIU had a duty to supervise plaintiff while plaintiff was riding a horse during the class known as PE 116-Beginning Horseback Riding.

24.     That on November 22, 2016, after paying monetary remuneration to defendant LIU and in furtherance of a course curriculum, while participating within the class known as PE 116-Beginning Horseback Riding, defendant LIU, their employees and agents, directed plaintiff, against her will, to ride a horse named Drake that plaintiff had never ridden and with whom plaintiff was unfamiliar with.

25.     That on November 22, 2016, after paying monetary remuneration to defendant LIU and in furtherance of a course curriculum, while participating within the class known as PE 116-Beginning Horseback Riding, defendant North Shore, their employees and agents, directed plaintiff, against her will, to ride a horse named Drake that plaintiff had never ridden and with whom plaintiff was unfamiliar with.

26.     That at the aforesaid time and place, while the plaintiff was riding a horse named Drake during the class known as PE 116-Beginning Horseback Riding, slowly and carefully and exercising the degree of care for her own safety that a reasonably prudent person would have exercised under the same conditions, plaintiff was caused to be thrown from said horse causing her to sustain serious personal injury.

27.     That the same was caused due to the negligence and carelessness of the defendants,

their agents, servants, and/or employees in the ownership, operation, maintenance, management and control of the horse, their failure to supervise plaintiff during her participation in said class, in forcing and directing plaintiff, against her will, to ride a horse that she was unfamiliar with and did not want to ride, in directing plaintiff to ride a horse knowing plaintiff was unfamiliar with said horse and with knowledge that the horse had tendencies to be violent and buck; in failing to warn plaintiff about the tendencies of said horse to be violent and buck when defendants, their agents, servants and/or employees knew, or by the exercise of reasonable care and caution could and should have known that the said horse was prone to being violent and bucking and was likely to do so while plaintiff was riding it.

28.     That the defendants, their agents, servants and/or employees had actual and/or constructive notice of the tendency of said horse to be violent and buck.

29.     That by forcing plaintiff to ride a horse that defendants knew plaintiff was unfamiliar with and defendants knew had a propensity to be violent and buck, defendants knowingly, significantly and unreasonably increased the risk that plaintiff would be thrown from said horse and sustain injury

30.     That the foregoing occurrence was caused solely and wholly as a result of the negligence of the defendants, their agents, servants, and employees, without any negligence on the part of the plaintiff contributing thereto.

31.     That by reason of the aforesaid dangerous and/or defective and/or hazardous condition, this plaintiff was rendered sick, sore, lame and disabled and was injured and bruised in and about her body and limbs; and upon information and belief, said injuries are of a permanent nature and character.  That by reason thereof, plaintiff has been prevented from following her usual vocation, including school, and has been obliged to incur expenses and obligations for medical care,

attention and treatment and she has been informed and believes that she will in the future be obliged to incur further expense and obligations for the medical care, attention and treatment and continue to have pain and suffering and be unable to follow her current vocation, for a long period of time to come in the future.

32.     That as a result of the foregoing plaintiff has been damaged in the sum that exceeds the jurisdictional limits of all lower courts and in an amount to be determined at time of trial.

.

WHEREFORE, plaintiff demands judgment against the defendants in the sum that exceeds the jurisdictional limits of all lower courts and in an amount to be determined at time of trial together with the costs and disbursements of this action.

Dated:  Mohegan Lake, New York
        April 02, 2018

Yours etc.

Goldblatt & Associates, P.C.
By: *Kenneth B. Goldblatt, Esq.*
Kenneth B. Goldblatt, Esq.
Attorneys for Plaintiff(s)
1846 East Main Street (Route 6)
Mohegan Lake, New York 10547
(914) 788-5000

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK         )

                                     ss:

COUNTY OF  WESTCHESTER    )

I, Kenneth B. Goldblatt, Esq.,  an attorney duly licensed to practice law in the State of New York, hereby affirms the following under the penalty of perjury:

I am the attorney for the Plaintiff, in the within action. I have read the foregoing Complaint and know the contents thereof; upon information and belief, the same is true except as to those matters therein stated to be alleged upon information and belief, which I believe to be true.

The information contained in the aforementioned Complaint as derived from conversations and correspondence with representatives of Plaintiff and through memoranda, investigations, reports and other matters contained in our file on this matter.

The reason that this verification is being made by myself and not by the plaintiff is that the Plaintiff is in a county other than that in which we maintain the office where this document was prepared.

Dated:  Mohegan Lake, New York
        April 02, 2018

*Kenneth B. Goldblatt, Esq.*

_____
Kenneth B. Goldblatt, Esq.

11-20-20

Exhibit B

Furman Summons and Complaint

16

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

----------------------------------------------------------------X

GABRIELLA F. FURMAN,

                                        Plaintiff(s),

                    -against-

NORTH SHORE EQUESTRIAN CENTER, INC.
and LONG ISLAND UNIVERSITY,

                                        Defendant(s).

----------------------------------------------------------------X

Index No.:
Date of Purchase:

**SUMMONS**

Plaintiff designates
Nassau County
as the place of trial.

The basis of venue is:
Residence of Plaintiff
2456 Kerry La.
Bellmore, NY 11710

Trial by Jury Demanded

**To the above-named Defendant(s)**

**You are hereby summoned** to answer the complaint in this action, and to serve a copy of your answer, if the complaint is not served with this summons, to serve a notice of appearance on the plaintiff's attorney(s) within twenty days after the services of this summons exclusive of the day of service, where service is made by delivery upon you personally within the state, or within 30 days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:        Mineola, New York
              September 4, 2019

                                    _____
                                    By: Joshua D. Pollack, Esq.
                                    Attorney for Plaintiff
                                    Gabriella F. Furman
                                    KRAMER & POLLACK, LLP
                                    25 Roslyn Road, 2nd Floor
                                    Mineola, New York 11501
                                    (516) 742-8897

TO:

        North Shore Equestrian Center, Inc.
        720 Northern Blvd.
        Greenvale, NY 11548

        Long Island University
        720 Northern Blvd.
        Greenvale, NY 11548

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-----------------------------------------------------------------X
GABRIELLA F. FURMAN,                                     Index No.:

                                    Plaintiff(s),

          -against-                                       **VERIFIED COMPLAINT**

NORTH SHORE EQUESTRIAN CENTER, INC.
and LONG ISLAND UNIVERSITY,
                                    Defendant(s).
-----------------------------------------------------------------X

     Plaintiff, by her attorneys, KRAMER & POLLACK, LLP, as and for a cause of action

alleges upon information and belief as follows:

     1.    At all times hereafter mentioned, plaintiff was and still is a resident of Bellmore,

County of Nassau, State of New York.

     2.    At all times hereinafter mentioned, defendant, North Shore Equestrian Center, Inc.

(Hereinafter "Equestrian Center") was and still is a domestic corporation duly licensed and

organized under the laws of the State of New York.

     3.    That on November 28, 2017, and at all times herein mentioned, defendant,

Equestrian Center, was and still is a foreign corporation duly licensed and organized under the laws

of the State of New York.

     4.    That on November 28, 2017, and at all times herein mentioned, defendant,

Equestrian Center, was and still is a domestic non-for-profit corporation duly licensed and

organized under the laws of the State of New York.

     5.    That on November 28, 2017, and at all times herein mentioned, defendant,

Equestrian Center, was and still is a foreign non-for-profit corporation duly licensed and organized

under the laws of the State of New York.

6.      That on November 28, 2017, and at all times herein mentioned, defendant, Equestrian Center, was and still is a partnership duly licensed and organized under the laws of the State of New York.

7.      That on November 28, 2017, and at all times herein mentioned, defendant, Long Island University, was and still is a private university established under the laws of the State of New York, with its principal office located at 720 Northern Blvd, Greenvale, NY 11548, in the County of Nassau, State of New York.

8.      That on November 28, 2017, and at all times herein mentioned, defendant, Long Island University, was and still is was and still is a domestic corporation duly licensed and organized under the laws of the State of New York.

9.      That on November 28, 2017, and at all times herein mentioned, defendant, Long Island University, was and still is a foreign corporation duly licensed and organized under the laws of the State of New York.

10.     That on November 28, 2017, and at all times herein mentioned, defendant, Long Island University, was and still is a domestic non-for-profit corporation duly licensed and organized under the laws of the State of New York.

11.     That on November 28, 2017, and at all times herein mentioned, defendant, Long Island University, was and still is a foreign non-for-profit corporation duly licensed and organized under the laws of the State of New York.

12.     That on November 28, 2017, and at all times herein mentioned, defendant, Long Island University, was and still is a partnership duly licensed and organized under the laws of the State of New York.

13.     That one or more of the exceptions of §1602 of the Civil Practice Law and Rules do apply to the within action.

## AS AND FOR A FIRST CAUSE OF ACTION

14.     Plaintiff repeats, reiterates and realleges each and every allegation contained in all the paragraphs set forth above of the within complaint with the same force and effect as if more fully set forth at length herein.

15.     That on November 28, 2017, and at all times herein mentioned, there existed a premises known as North Shore Equestrian Center, located within the confines of the campus of defendant, Long Island University, at 720 Northern Blvd, Greenvale, NY 11548, in the County of Nassau, State of New York.

16.     That on November 28, 2017, and at all times herein mentioned, the aforesaid premises was owned by defendant, Equestrian Center.

17.     That on November 28, 2017, and at all times herein mentioned, the aforesaid premises was leased by defendant, Equestrian Center.

18.     That on November 28, 2017, and at all times herein mentioned, the aforesaid premises was operated by defendant, Equestrian Center.

19.     That on November 28, 2017, and at all times hereinafter mentioned, the aforesaid premises was maintained by defendant, Equestrian Center.

20.     That on November 28, 2017, and at all times hereinafter mentioned, the aforesaid premises was managed by defendant, Equestrian Center.

21.     That on November 28, 2017, and at all times hereinafter mentioned, the aforesaid premises was controlled by defendant, Equestrian Center.

22. That on November 28, 2017, and at all times hereinafter, defendant, Equestrian Center, was a subdivision and/or subsidiary of defendant, Long Island University.

23. That on November 28, 2017, defendant, Equestrian Center, conducted, offered and provided horseback riding training, instruction and/or lessons at its facility located at 720 Northern Blvd, Greenvale, New York to the public at large, including students of defendant, Long Island University.

24. That on November 28, 2017, the plaintiff herein, was enrolled as a student of defendant, Long Island University, located at 720 Northern Blvd, Greenvale, New York.

25. That on November 28, 2017, the plaintiff herein, was enrolled in and/or received horseback riding training, instruction and/or lessons at defendant's, Equestrian Center, facility located at 720 Northern Blvd, Greenvale, New York.

26. At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Equestrian Center, had a duty to properly supervise, observe, oversee, look after, guard, keep safe and care for individuals who were in the care, custody, and control of defendant, Equestrian Center, while participating in and receiving horseback riding training, instruction and/or lessons at its facility.

27. At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Equestrian Center, had a duty to supervise, control, and instruct its agents, servants, employees, and representatives, with respect to the proper manner of caring for, keeping safe and supervising individuals participating in and receiving horseback riding training, instruction and/or lessons at its facility.

28. At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Equestrian Center, and its agents, servants, supervisees, employees and

Case 9:21-cv-01597 Document 1-1 Filed 03/25/21 Page 33 of 54 PageID #: 39

representatives, had a duty to properly select, assign and provide to individuals participating in and receiving horseback riding training, instruction and lessons, including plaintiff, horses that possessed the propensities that were suitable and appropriate for the setting in which they were used.

29.     At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Equestrian Center, and its agents, servants, supervisees, employees and representatives, had a duty to properly select, assign and provide to individuals receiving horseback riding training, instruction and/or lessons at its facility, including plaintiff, horses that were commensurate with said individual's level of knowledge, experience, skill and ability.

30.     At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Equestrian Center, and its agents, servants, supervisees, employees and representatives, had a duty to provide the proper and necessary horseback riding equipment and appliances, including but not limited to, saddles and girths, to ensure that the horseback riding training, instruction and/or lessons were conducted and performed in a safe and protected manner.

31.     At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Equestrian Center, and its agents, servants, supervisees, employees and representatives, had a duty to provide the proper and necessary horseback riding equipment and appliances, including but not limited to, saddles and girths, that were in good and proper working order.

32.     At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Equestrian Center, and its agents, servants, supervisees, employees and representatives, had a duty to properly place, attach, fasten, affix, secure and adjust the

6

horseback riding equipment and appliances, including but not limited to, saddles and girths, upon the horses utilized in the horseback riding training, instruction and/or lessons conducted at its facility.

33.    At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Equestrian Center, and its agents, servants, supervisees, employees and representatives, had a duty to properly inspect and examine the horseback riding equipment and appliances, including but not limited to, saddles and girths, that were placed, attached, fastened, affixed and secured upon the horses utilized in the horseback riding training, instruction and/or lessons conducted at its facility.

34.    At all times herein mentioned, on November 28, 2017, and prior thereto, defendant, Equestrian Center, and its agents, servants, supervisees, employees and representatives, breached their duty by failing to properly supervise, observe, oversee, look after, guard, keep safe and care for individuals who were in its care, custody and control, including plaintiff, while participating in and receiving horseback riding training, instruction and/or lessons at its facility, thereby causing the accident described herein.

35.    At all times herein mentioned, on November 28, 2017, and prior thereto, defendant, Equestrian Center, breached their duty by failing to properly supervise, observe, monitor and instruct its employees, agents, representatives and servants, with respect to the proper manner of caring for, keeping safe and supervising individuals participating in and receiving horseback riding instruction, training and/or lessons at its facility, including the plaintiff herein.

36.    At all times herein mentioned, on November 28, 2017, and prior thereto, defendant, Equestrian Center, and its agents, servants, supervisees, employees and

7

representatives, breached their duty by negligently providing plaintiff with a horse, in particular, "Tuna," which possessed propensities that were inappropriate and unsuitable for the setting in which it was used, considering plaintiff's lack of horseback riding knowledge, experience, skill and ability.

37. At all times herein mentioned, on November 28, 2017, and prior thereto, defendant, Equestrian Center, and its agents, servants, employees and representatives, breached their duty by negligently providing plaintiff with a horse, in particular, "Tuna," that bore improper and dangerous horseback riding equipment and appliances, including but not limited to, saddles and girths.

38. At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Equestrian Center, and its agents, servants, employees and representatives, breached their duty by negligently providing plaintiff with a horse, in particular, "Tuna," that bore horseback riding equipment and appliances, including but not limited to, saddles and girths, that were not in good and proper working order.

39. At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Equestrian Center, and its agents, servants, employees and representatives, breached their duty by failing to properly place, attach, fasten, affix, secure and adjust the necessary and proper horseback riding equipment and appliances, including but not limited to, saddles and girths, upon the horse that was provided to plaintiff, in particular "Tuna," thereby causing plaintiff to fall, sustaining serious and permanent injuries.

40. At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Equestrian Center, and its agents, servants, employees and representatives, breached their duty by failing to properly inspect and examine the horseback riding equipment and

appliances, including but not limited to, saddles and girths, that were on the horse provided to plaintiff, in particular, "Tuna," and the manner in which such equipment and appliances were placed, attached, fastened, affixed, secured, to ensure the safety and protection of the plaintiff herein.

41.     At all times herein mentioned, on November 28, 2017, while the plaintiff was participating in and receiving horseback riding instruction, training and/or lessons at the aforesaid Equestrian Center facility, the saddle and/or girth on the horse she was riding, in particular, "Tuna," was caused to change position and shift, causing plaintiff to be violently precipitated to the ground and to sustain severe and permanent injuries.

42.     That the aforesaid accident and the injuries resulting therefrom were caused by reason of the negligence of the defendant, Equestrian Center, and its agents, servants, employees and representatives, without any negligence on the part of plaintiff contributing thereto.

43.     That the aforesaid accident and the injuries resulting therefrom were caused by reason of the negligence of the defendant, Equestrian Center, in failing to supervise, observe, monitor and instruct its agents, servants, employees and representatives, with respect to the proper manner of caring for, keeping safe and overseeing individuals, including the plaintiff, participating in and receiving horseback riding instruction, training and lessons at its facility.

44.     As a result of the foregoing, the plaintiff was severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous shock and mental anguish, great physical pain and emotional upset, some of which injuries are permanent in nature and duration; plaintiff, will be permanently caused to suffer pain, inconvenience and other adverse effects of such injuries; the plaintiff, incurred and in the future will necessarily incur further hospital and/or medical expenses in an effort to be cured of said injuries; the plaintiff has suffered and in the

future will necessarily suffer additional loss of time and earnings from employment; and the plaintiff will be unable to pursue her usual duties and recreational and social activities with the same degree of efficiency and pleasure as prior to this incident.

45.     That by reason of the foregoing, plaintiff has been damaged in an amount that exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

### AS AND FOR A SECOND CAUSE OF ACTION

46.     Plaintiff repeats, reiterates and realleges each and every allegation contained in all the paragraphs set forth above of the within complaint as if more fully set forth herein at length.

47.     That on November 28, 2017, and at all times herein mentioned, there existed a premises known as Long Island University located at 720 Northern Blvd, Greenvale, NY 11548, in the County of Nassau, State of New York.

48.     That on November 28, 2017, and at all times herein mentioned, the aforesaid premises was owned by defendant, Long Island University.

49.     That on November 28, 2017, and at all times herein mentioned, the aforesaid premises was leased by defendant, Long Island University.

50.     That on November 28, 2017, and at all times herein mentioned, the aforesaid premises was maintained by defendant, Long Island University.

51.     That on November 28, 2017, and at all times herein mentioned, the aforesaid premises was managed by defendant, Long Island University.

52.     That on November 28, 2017, and at all times herein mentioned, the aforesaid premises was controlled by defendant, Long Island University.

53.     That on November 28, 2017, and at all times herein mentioned, the aforesaid premises was operated by the defendant, Long Island University.

54.     That on November 28, 2017, and at all times hereinafter mentioned, the aforesaid premises was managed by defendant Long Island University.

55.     That on November 28, 2017, and at all times hereinafter mentioned, defendant, Long Island University, managed defendant, Equestrian Center.

56.     That on November 28, 2017, and at all times hereinafter mentioned, defendant, Long Island University, controlled defendant, Equestrian Center.

57.     That on November 28, 2017, and at all times hereinafter, defendant, Equestrian Center, was a subdivision and/or subsidiary of defendant, Long Island University.

58.     That on November 28, 2017, defendant, Long Island University, and/or its agents, servants, employees and representatives, including the defendant, Equestrian Center, conducted, offered and provided horseback riding training, instruction and/or lessons at its facility located at 720 Northern Blvd, Greenvale, New York to the public at large, including students of defendant, Long Island University.

59.     That on November 28, 2017, the plaintiff herein, was enrolled as a student of defendant, Long Island University, located at 720 Northern Blvd, Greenvale, New York.

60.     That on November 28, 2017, the plaintiff herein, was enrolled in and/or received horseback riding training, instruction and/or lessons at the Equestrian Center within the campus of defendant, Long Island University, located at 720 Northern Blvd, Greenvale, New York.

61.     At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Long Island University, and/or its agents, servants, employees and representatives, including the defendant, Equestrian Center, had a duty to properly supervise, observe, oversee, look after, guard, keep safe and care for individuals who were in the care, custody, and control of

11

Case 9:21-cv-01597 Document 1-1 Filed 03/25/21 Page 39 of 54 PageID #: 45

defendant, Long Island University, while participating in and receiving horseback riding training, instruction and/or lessons at its facility.

62.    At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Long Island University, and/or its agents, servants, employees and representatives, including the defendant, Equestrian Center, had a duty to supervise, control, and instruct its agents, servants, employees, and representatives, with respect to the proper manner of caring for, keeping safe and supervising individuals participating in and receiving horseback riding training, instruction and/or lessons at its facility.

63.    At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Long Island University, and its agents, servants, supervisees, employees and representatives, including the defendant, Equestrian Center, had a duty to properly select, assign and provide to individuals participating in and receiving horseback riding training, instruction and lessons, including plaintiff, horses that possessed the propensities that were suitable and appropriate for the setting in which they were used.

64.    At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Long Island University, and/or its agents, servants, employees and representatives, including the defendant, Equestrian Center, had a duty to properly select, assign and provide to individuals receiving horseback riding training, instruction and/or lessons at its facility, including plaintiff, horses that were commensurate with said individual's level of knowledge, experience, skill and ability.

65.    At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Long Island University, and/or its agents, servants, employees and representatives, including the defendant, Equestrian Center, had a duty to provide the proper and necessary

12

horseback riding equipment and appliances, including but not limited to, saddles and girths, to ensure that the horseback riding training, instruction and/or lessons were conducted and performed in a safe and protected manner.

66.     At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Long Island University, and/or its agents, servants, employees and representatives, including defendant, Equestrian Center, had a duty to provide the proper and necessary horseback riding equipment and appliances, including but not limited to, saddles and girths, that were in good and proper working order.

67.     At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Long Island University, and/or its agents, servants, employees and representatives, including defendant, Equestrian Center, had a duty to properly place, attach, fasten, affix, secure and adjust the horseback riding equipment and appliances, including but not limited to, saddles and girths, upon the horses utilized in the horseback riding training, instruction and/or lessons conducted at its facility.

68.     At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Long Island University, and/or its agents, servants, employees and representatives, including defendant, Equestrian Center, had a duty to properly inspect and examine the horseback riding equipment and appliances, including but not limited to, saddles and girths, that were placed, attached, fastened, affixed and secured upon the horses utilized in the horseback riding training, instruction and/or lessons conducted at its facility.

69.     At all times herein mentioned, on November 28, 2017, and prior thereto, defendant, Long Island University, and/or its agents, servants, employees and representatives, including defendant, Equestrian Center, breached their duty by failing to properly supervise,

13

observe, oversee, look after, guard, keep safe and care for individuals who were in its care, custody and control, including plaintiff, while participating in and receiving horseback riding training, instruction and/or lessons at its facility, thereby causing the accident described herein

70.     At all times herein mentioned, on November 28, 2017, and prior thereto, defendant, Long Island University, and/or its agents, servants, employees and representatives, including defendant, Equestrian Center, breached their duty by failing to properly supervise, observe, monitor and instruct its employees, agents, representatives and servants, with respect to the proper manner of caring for, keeping safe and supervising individuals participating in and receiving horseback riding instruction, training and/or lessons at its facility, including the plaintiff herein.

71.     At all times herein mentioned, on November 28, 2017, and prior thereto, defendant, Long Island University, and/or its agents, servants, employees and representatives, including defendant, Equestrian Center, breached their duty by negligently providing plaintiff with a horse, in particular, "Tuna," which possessed propensities that were inappropriate and unsuitable for the setting in which it was used, considering plaintiff's lack of horseback riding knowledge, experience, skill and ability.

72.     At all times herein mentioned, on November 28, 2017, and prior thereto, defendant, Long Island University, and/or its agents, servants, employees and representatives, including defendant, Equestrian Center, breached their duty by negligently providing plaintiff with a horse, in particular, "Tuna," that bore improper and dangerous horseback riding equipment and appliances, including but not limited to, saddles and girths.

73.     At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Long Island University, and/or its agents, servants, employees and representatives,

14

Case 9:21-cv-01597   Document 1-1   Filed 03/25/21   Page 42 of 54 PageID #: 48

including defendant, Equestrian Center, breached their duty by negligently providing plaintiff with a horse, in particular, "Tuna," that bore horseback riding equipment and appliances, including but not limited to, saddles and girths, that were not in good and proper working order.

74.     At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Long Island University, and/or its agents, servants, employees and representatives, including defendant, Equestrian Center, breached their duty by failing to properly place, attach, fasten, affix, secure and adjust the necessary and proper horseback riding equipment and appliances, including but not limited to, saddles and girths, upon the horse that was provided to plaintiff, in particular "Tuna," thereby causing plaintiff to fall, sustaining serious and permanent injuries.

75.     At all times hereinafter mentioned, on November 28, 2017, and prior thereto, defendant, Long Island University, and/or its agents, servants, employees and representatives, including defendant, Equestrian Center, breached their duty by failing to properly inspect and examine the horseback riding equipment and appliances, including but not limited to, saddles and girths, that were on the horse provided to plaintiff, in particular, "Tuna," and the manner in which such equipment and appliances were placed, attached, fastened, affixed, secured to ensure the safety and protection of the plaintiff herein.

76.     At all times herein mentioned, on November 28, 2017, while the plaintiff was participating in and receiving horseback riding instruction, training and/or lessons at the aforesaid Equestrian Center facility on the grounds of Long Island University, the saddle and/or girth that were on the horse she was riding, in particular, "Tuna," was caused to change position and shift, causing plaintiff to be violently precipitated to the ground and to sustain severe and permanent injuries.

Case 9:21-cv-01597   Document 1-1   Filed 03/25/21   Page 43 of 54 PageID #: 49

77.     That the aforesaid accident and the injuries resulting therefrom were caused by reason of the negligence of the defendant, Long Island University, and its agents, servants, employees and representatives, without any negligence on the part of plaintiff contributing thereto.

78.     That the aforesaid accident and the injuries resulting therefrom were caused by reason of the negligence of the defendant, Long Island University, in failing to supervise, observe, monitor and instruct its agents, servants, employees and representatives, with respect to the proper manner of caring for, keeping safe and overseeing individuals, including the plaintiff, participating in and receiving horseback riding instruction, training and lessons at its facility.

79.     As a result of the foregoing, the plaintiff was severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous shock and mental anguish, great physical pain and emotional upset, some of which injuries are permanent in nature and duration; plaintiff, will be permanently caused to suffer pain, inconvenience and other adverse effects of such injuries; the plaintiff, incurred and in the future will necessarily incur further hospital and/or medical expenses in an effort to be cured of said injuries; the plaintiff has suffered and in the future will necessarily suffer additional loss of time and earnings from employment; and the plaintiff will be unable to pursue her usual duties and recreational and social activities with the same degree of efficiency and pleasure as prior to this incident.

80.     That by reason of the foregoing, plaintiff has been damaged in an amount that exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

**WHEREFORE**, plaintiff demands judgment against defendants together with the costs and

disbursements of this action.

Dated: Mineola, New York
       September 4, 2019

Yours, etc.

_____

Joshua D. Pollack, Esq.
Attorney for Plaintiff
Gabriella F. Furman
KRAMER & POLLACK, LLP
25 Roslyn Road, 2nd Floor
Mineola, New York 11501
(516) 742-8897

17

## VERIFICATION

STATE OF NEW YORK )
                   ) ss
COUNTY OF Broome )

I, Gabriella F. Furman, being duly sworn, depose and say:

I am the plaintiff in the within action. I have read the foregoing Complaint, and know the contents thereof. The same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

_____
Gabriella F. Furman

Sworn to before me on the
20th day of September, 2019

_____
NOTARY PUBLIC

Case 9:21-cv-01597   Document 1-1   Filed 03/25/21   Page 46 of 54 PageID #: 52

Index No.


SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
GABRIELLA F. FURMAN,

Plaintiff(s),

     -against-


NORTH SHORE EQUESTRIAN CENTER, INC.
and LONG ISLAND UNIVERSITY,

Defendant(s).

---

**SUMMONS AND
VERIFIED COMPLAINT**

---


**KRAMER & POLLACK, LLP**
**Attorneys for Plaintiff(s)**
**25 Roslyn Road, 2nd Floor**
**Mineola, New York 11501**
**(516) 742-8897**

---

Case 9:21-cv-01597 Document 1-1 Filed 03/25/21 Page 47 of 54 PageID #: 53

11-20-20

Exhibit C

Additional Insured Endorsement   Markel 2016 Policy

18

FILED: NASSAU COUNTY CLERK 12/31/2020 12:47 PM
NYSCEF DOC. NO. 1
INDEX NO. 615294/2020
RECEIVED NYSCEF: 12/31/2020

11-20-20



**INTERLINE**

POLICY NUMBER:  9502AG031056-21

# Markel Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
FARM LIABILITY COVERAGE FORM

### SCHEDULE

Designation Of Premises/Land Leased To You:
C.W. Post Campus, Brookville, NY 11545
Name Of Person(s) Or Organization:

Long Island University
C.W. Post Campus
Brookville, NY  11545

**A.** Section **II** - Who Is An Insured in the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**, and the definition of "insured" under Section **IV** - Definitions of the **FARM LIABILITY COVERAGE FORM** are amended to include as an additional insured the person(s) or organization(s) shown in the Schedule above, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule above and subject to the following additional exclusion:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises;

2. Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule above; or

3. Negligent acts or omissions on the part of the person(s) or organization(s) shown in the Schedule above.

However:

1. The insurance afforded to such additional insureds only applies to the extent permitted by law; and

2. If coverage provided to the additional insureds is required by a contract or agreement, the insurance afforded to such additional insureds will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to the **Limits Of Insurance** section:

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions remain unchanged.

**MIL 1202 03 14**          Includes copyrighted material of Insurance Services Office, Inc.,          **Page 1 of 1**
with its permission.

19

Case 9:21-cv-01597  Document 1-1  Filed 03/25/21  Page 49 of 54 PageID #: 55

11-20-20

# Exhibit D

Limited Professional Liability-
Horse Trainers and Riding Instructors Endorsement
Markel 2016 Policy

20

11-20-20



COMMERCIAL GENERAL LIABILITY

POLICY NUMBER:  9502AG031056-21

## MARKEL INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LIMITED PROFESSIONAL LIABILITY -
## HORSE TRAINERS AND RIDING INSTRUCTORS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

At no additional premium, it is hereby understood and agreed that the following coverage is added to **SECTION I** - COVERAGES, **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

1. Insuring Agreement

    d. "Bodily Injury" or "Property Damage" arising out of the rendering of or failure to render "Professional Services".

2. **SECTION I - COVERAGES, 2. Exclusions** is amended to include the following exclusions: (As respect to coverage for professional services)

    "Bodily Injury" or "Property Damage" for which any insured may be held liable by reason of:

    a. Any dishonest fraudulent, criminal or malicious act or omission of the insured.

    b. The conduct of any business enterprise (including the ownership, maintenance or use of any property in connection therewith) owned by the insured or in which any insured is a partner, or which is directly or indirectly controlled, operated or managed by any insured either individually or in a fiduciary capacity; but this exclusion does not apply to the practice of professional hazards of "Agriculture" related risks.

    c. "Bodily Injury" or "Property Damage" resulting from "personal injury".

    d. Damages arising directly or indirectly from the insured's activities as an officer or director of any corporation, company or business other than that shown on the Policy Declarations as Named Insured.

    Definitions:

    1. "Agriculture" means the science or art of cultivating the soil, producing crops, and raising livestock and in varying degrees the preparation of these products for man's use and their disposal. Raising livestock is expanded to include training and riding instruction provided to horses and its riders.

    2. "Professional Services" means the services limited to those rendered as a Horse Trainer and/or Riding Instructor.

All other terms and conditions remain the same.

MGL 126 (6/98)                    Copyright, Markel Insurance Company, 1998 **Page 1 of 1**

21

Case 9:21-cv-01597   Document 1-1   Filed 03/25/21   Page 51 of 54 PageID #: 57

11-20-20

Exhibit E

Additional Insured Endorsement    Markel 2016 Policy

22

Case 9:21-cv-01597 Document 1-1 Filed 03/25/21 Page 52 of 54 PageID #: 58

11-20-20



**INTERLINE**

POLICY NUMBER: **9502AG031056 - 22**

# Markel Insurance Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
FARM LIABILITY COVERAGE FORM

**SCHEDULE**

Designation Of Premises/Land Leased To You:
C.W. Post Campus, Brookville, NY 11545
Name Of Person(s) Or Organization:

Long Island University
C.W. Post Campus
Brookville, NY 11545

**A.** Section **II** - Who Is An Insured in the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**, and the definition of "insured" under Section **IV** - Definitions of the **FARM LIABILITY COVERAGE FORM** are amended to include as an additional insured the person(s) or organization(s) shown in the Schedule above, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule above and subject to the following additional exclusion:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises;

2. Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule above; or

3. Negligent acts or omissions on the part of the person(s) or organization(s) shown in the Schedule above.

However:

1. The insurance afforded to such additional insureds only applies to the extent permitted by law; and

2. If coverage provided to the additional insureds is required by a contract or agreement, the insurance afforded to such additional insureds will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to the **Limits Of Insurance** section:

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions remain unchanged.

**MIL 1202 03 14**          Includes copyrighted material of Insurance Services Office, Inc.,          **Page 1 of 1**
with its permission.

23

FILED: NASSAU COUNTY CLERK 12/31/2020 12:47 PM
NYSCEF DOC. NO. 1
INDEX NO. 615294/2020
RECEIVED NYSCEF: 12/31/2020

11-20-20

Exhibit F

Limited Professional Liability-
Horse Trainers and Riding Instructors Endorsement
Markel 2017 Policy

24

11-20-20



**COMMERCIAL GENERAL LIABILITY**

POLICY NUMBER:  9502AG031056 - 22

## MARKEL INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LIMITED PROFESSIONAL LIABILITY -
## HORSE TRAINERS AND RIDING INSTRUCTORS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

At no additional premium, it is hereby understood and agreed that the following coverage is added to **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

1. Insuring Agreement

   d. "Bodily Injury" or "Property Damage" arising out of the rendering of or failure to render "Professional Services".

2. **SECTION I - COVERAGES, 2. Exclusions** is amended to include the following exclusions: (As respect to coverage for professional services)

   "Bodily Injury" or "Property Damage" for which any insured may be held liable by reason of:

   a. Any dishonest fraudulent, criminal or malicious act or omission of the insured.

   b. The conduct of any business enterprise (including the ownership, maintenance or use of any property in connection therewith) owned by the insured or in which any insured is a partner, or which is directly or indirectly controlled, operated or managed by any insured either individually or in a fiduciary capacity; but this exclusion does not apply to the practice of professional hazards of "Agriculture" related risks.

   c. "Bodily Injury" or "Property Damage" resulting from "personal injury".

   d. Damages arising directly or indirectly from the insured's activities as an officer or director of any corporation, company or business other than that shown on the Policy Declarations as Named Insured.

   Definitions:

   1. "Agriculture" means the science or art of cultivating the soil, producing crops, and raising livestock and in varying degrees the preparation of these products for man's use and their disposal. Raising livestock is expanded to include training and riding instruction provided to horses and its riders.

   2. "Professional Services" means the services limited to those rendered as a Horse Trainer and/or Riding Instructor.

All other terms and conditions remain the same.

**MGL 126 (6/98)**          Copyright, Markel Insurance Company, 1998 **Page 1 of 1**

25